IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:17-cv-534

| | |
|---|---|
| EPIC GAMES, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) **COMPLAINT** |
| ██████████████ | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") complains of Defendant ████████

(████ or "Defendant") as follows:

## NATURE OF THE ACTION

1.      This is a civil action seeking injunctive relief and damages against Defendant for

(i) copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

(ii) contributory copyright infringement in violation of the Copyright Act, §§ 106 and 501, *et*

*seq.*; (iii) breach of contract in violation of North Carolina law; and (iv) intentional interference

with contractual relations in violation of North Carolina law.

2.      The Copyright Act protects the owners of creative works from the unauthorized

use of those works by others.  The rights to prepare derivative works based upon a copyrighted

work and to publicly perform and display a copyrighted work are some of the exclusive rights

granted to copyright holders under the Act.  The definition of derivative work encompasses any

form in which the original work may be recast, transformed, or adapted.  The exclusive right of

public performance includes the performance of audiovisual works, and the exclusive right of

public display includes the right to show a copyrighted work, or a portion or an image of it, to the public. With a few exceptions that do not apply here, it is unlawful to make unauthorized derivative works, and to publicly display and/or publicly perform such works without the permission of the copyright owner. It is likewise unlawful to induce, cause, or materially contribute to the creation of unauthorized derivative works by others.

3.     The Digital Millennium Copyright Act ("DMCA") was enacted in 1998 to bring the Copyright Act into the digital age. Among other things, the DMCA provides that a copyright holder may send an Online Service Provider (an "OSP") a written notification of claimed infringement (a "notice") that provides the OSP with certain statutorily-mandated information about the infringement and serves as notice to the OSP that it is hosting content that infringes the copyright holder's rights. In order to avoid potential secondary liability for hosting the infringing material, the OSP must remove that material after receiving the notice. In response to the removal, the user who posted material at issue may submit a counter notification stating that the material was removed due to mistake or misidentification. Once submitted, the counter-notification commences a 10-day period during which the copyright holder who submitted the notice much file an action against the user seeking to restrain the user from engaging in infringing activity. If the copyright holder does not file the action, the OSP is to restore the content at issue.

4.     This is a copyright infringement and breach of contract case in which the Defendant is infringing Epic's copyrights by injecting unauthorized computer code into the copyright protected code of Epic's popular Fortnite® video game.[1] In so doing, Defendant is

---

[1] Game names that are registered trademarks of Epic are shown with the federal registration symbol the first time each game name appears and without it thereafter.

creating unauthorized derivative works of Fortnite by modifying the game code and, thus, materially altering the game that the code creates and the experience of those who play it.

5.     Further, Defendant is streaming videos of himself playing and cheating at Fortnite by using cheat software ("cheats" or "hacks") to unlawfully modify Fortnite's software.  In the videos Defendant posts on YouTube, Defendant promotes and demonstrates a Fortnite cheat, and provides viewers with a link to a site from which they can acquire the cheat for themselves.

6.     Defendant's cheating, and his inducing and enabling of others to cheat, is ruining the game playing experience of players who do not cheat.  The software that Defendant uses to cheat infringes Epic's copyrights in the game and breaches the terms of the agreements to which Defendant agreed in order to have access to the game.  The same is true for his unauthorized public display and performance of the unlawfully modified versions of Fortnite on YouTube.

7.     Defendant has been banned from playing Fortnite for this conduct at least 14 times.  He nevertheless continues to play using other accounts he created using false names.  He has also continued to cheat and to publicly perform and display video of himself cheating on YouTube in an effort to induce others to buy the cheat he sells so that they too can cheat at Fortnite.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 106 and 501, *et. seq.*  This Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction over Defendant because, as described below, Defendant agreed to be subject to the exercise of jurisdiction over him by the courts in this District.  This Court also has personal jurisdiction over Defendant because Defendant has

purposefully availed himself of the privileges of conducting activities and doing business in North Carolina and in this District, thus invoking the benefits and protections of North Carolina's laws, by entering into contractual agreements with Epic in North Carolina, and repeatedly accessing Epic's servers, which are located in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a District in which a substantial part of the events giving rise to Plaintiffs' claims occurred, in which Defendant committed acts of copyright infringement, and/or where Plaintiffs' injuries were suffered.   Venue is also proper in this District because, as described below, Defendant consented to venue in this District.

## THE PARTIES

11.     Epic is a corporation duly organized and existing under the laws of the state of Maryland.   Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

12.     On information and belief, Defendant ███████████████████ is a citizen and resident of the United States.

## FACTS APPLICABLE TO ALL CLAIMS

### *Epic and Fortnite*

13.     Founded in 1991, Epic is a Cary, North Carolina-based developer and publisher of computer games and content creation software.   Epic is recognized worldwide as the creator of the Unreal®, Gears of War®, and Infinity Blade® series of games.   Epic is also globally known as the creator of the Unreal Engine® content creation engine software.   More recently, Epic has released the multiplayer online battle arena game Paragon®, the virtual reality game Robo Recall®, and Fortnite.

14.     Fortnite is a co-op survival and building action game that has been described as being "about exploration, scavenging gear, building fortified structures and fighting waves of encroaching monsters hellbent on killing you and your friends."[2]

15.     In Fortnite, players may join together online to build forts, weapons, and traps in an effort to rebuild and defend towns left vacant in the wake of "the Storm" from the monsters that populate the Fortnite world.

16.     Fortnite was first released in a limited manner in October, 2013.

17.     Fortnite was released broadly on July 25, 2017.  Fortnite's free-to-play "Battle Royale" game mode was released to the public on September 26, 2017.

---

[2] Michael McWhertor, *Epic Games' Fortnite will be the developer's first Unreal Engine 4 game*, July 12, 2012, available at: https://www.polygon.com/gaming/2012/7/12/3155138/epic-games-fortnite-will-be-the-developers-first-unreal-engine-4-game

18.     Fortnite has been extremely popular.  It already has over ten million players and is on track to be Epic's most successful game yet.  (A true and correct screen print from the Fortnite page on Epic's website [available at: https://www.epicgames.com/fortnite/en-US/buy-now/battle-royale] that provides a glimpse into Fortnite's violent and cartoonish world is pictured below at **Figure 1**.)



*Figure 1.*

19.     Like other games in the "battle royale" genre, Fortnite's Battle Royale game mode involves dropping (in Fortnite, by glider from a flying "battle bus," pictured above) a limited number of players into a large map.  Fortnite's Battle Royale game mode combines Fortnite's building skills and destructible environments with intense player vs. player ("PvP") combat.  The players battle each other until only one player remains standing.  That player wins the game.

20.     In designing Fortnite's Battle Royale game mode, Epic made a conscious choice not to sell items to players that would give any player a competitive advantage in order to ensure a fair playing field for all players.

### *Epic's Copyrights in Fortnite*

21.     Epic is the author and owner of all the rights and title to the copyrights in Fortnite, including without limitation, in its computer software.

22.     Epic's copyrights in various versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), and TX008-352-178 (dated December 23, 2016). (True and correct copies of these certificates of registration are attached hereto collectively as **Exhibit A**.)

### *Epic's Terms of Service*

23.     In order to play Fortnite on PC—which is the platform on which Defendant is accessing and cheating at Fortnite in this case—a user must first create an account with Epic. In order to create an account, a would-be user must affirmatively acknowledge that he or she has "read and agree[d] to the Terms of Service" (the "Terms"). (A true and correct copy of the Terms of Service is attached hereto as **Exhibit B**.)

24.     The Terms apply to any use of, or access to, Fortnite using one's PC, as Defendant does in this case.

25.     The Terms also apply to any use of Epic's websites by any "guest or registered users . . . including any content, functionality, products, and services offered on or through" Epic's websites. (*See id.* at 1.) This encompasses Epic's Fortnite website and its guests and registered users.

26.     The Terms further apply to a user's "use of other Epic services that display or include the[] Terms." (*Id.* at 1.) This too covers Fortnite and those who use it.

27.     The Terms request that users read the Terms "carefully" before beginning to access or use Epic's services. (*Id.*)

28. The Terms provide that "[b]y using [Epic's s]ervices, [the user] accept[s] and agree[s] to be bound and abide by these Terms . . ." (*Id.*) The Terms further provide that a user who does not want to agree to the Terms "must not use [Epic's s]ervices." (*Id.*)

29. The Terms include a section on "Governing Law and Jurisdiction," which provides that "[a]ny dispute . . . arising out of or related to these Terms ("Claim") shall be governed by North Carolina law . . . . Any legal suit, action, or proceeding arising out of, or related to, a [dispute or claim by the user arising out of or related to the Terms] shall be instituted exclusively in the federal courts of the United States or the courts of North Carolina, in each case located in Wake County." (*Id.* at 4.)

30. This section of the Terms further provides that, by agreeing to the Terms, the user "agree[s] to waive any and all objections to the exercise of jurisdiction over [the user] by such courts and to venue in such courts." (*Id.*)

31. The Terms explain that the services "including all content, features, and functionality thereof, are owned by Epic, its licensors, or other providers of such material and are protected by United States and international copyright . . . laws." (*Id.* at 1.)

32. The Terms also inform the user that use and access of certain "software or services . . . may be subject to separate agreement . . . such as end user license agreements." (*Id.*)

33. The Terms also include an "Intellectually Property Rights" section which sets forth the permissions users have with respect to Epic's intellectual property and things that users are prohibited from doing. Specifically, the Terms provide that users:

a. are "permitted to use [Epic's s]ervices for [their] personal, non-commercial use only or legitimate business purposes related to your role as a current or prospective customer of Epic"; **but**

b. "**must not copy, modify, create derivative works of, publicly display**, **publicly perform**, republish, **or transmit any of the material obtained through [Epic's s]ervices**, or delete, or alter any copyright, trademark, or other proprietary rights notices from copies of materials from [Epic's s]ervices"; and

c. "must not reproduce, sell, or exploit for any commercial purposes any part of [Epic's s]ervices, access to [Epic's s]ervices or use of [Epic's s]ervices or any services or materials available through Epic's [s]ervices." (*Id.* at 2.) (emphasis added).

34. The Terms further provide that users may use Epic's services "only for lawful purposes and in accordance with these Terms of Service. [Users] agree not to access or use the [s]ervices for any purpose that is illegal or beyond the scope of the [s]ervices' intended use . . ." (*Id.*)

35. By creating an account with Epic in order to access, download, and play Fortnite, and by using Epic's services, including, without limitation, by playing Fortnite, Defendant agreed to be bound by the Terms. And by creating multiple accounts, as Defendant did here, Defendant agreed to be bound by the Terms multiple times.

36. The Terms constitutes a valid and binding contract between Defendant and Epic.

37. Defendant's conduct described herein violates the Terms and breaches Defendant's agreement with Epic.

### *Fortnite End User License Agreement*

38. In order to play Fortnite on PC, as Defendant did here, a user must first acknowledge that he or she has read and agreed to abide by the terms in the Fortnite End User License Agreement for PC ("EULA"). (A true and correct copy of the EULA is attached hereto as **Exhibit C**.)

39.     The EULA applies to any user who downloads, uses, or "otherwise indicates acceptance" of the EULA. (*Id.* at 1.)

40.     Like the Terms, the EULA explicitly requests that individuals read the EULA "carefully." (*Id.* at 1.) The EULA further makes clear that the EULA "is a legal document that explains [the user's] rights and obligations" in connection with the access and use of Fortnite. (*Id.*)

41.     The EULA includes a section titled "Governing Law and Jurisdiction" under which the user agrees that the EULA will be deemed to have been made and executed in the State of North Carolina. (*Id.* at 5-6.)

42.     This section of the EULA further provides that "[a]ny action or proceeding brought to enforce the terms of this Agreement or to adjudicate any dispute must be brought in the Superior Court of Wake County, State of North Carolina or the United States District Court for the Eastern District of North Carolina." (*Id.* at 6.)

43.     Under this section of the EULA, the user agrees to the exclusive jurisdiction and venue of these courts. . . .[and to] waive any claim of inconvenient forum and any right to a jury trial. (*Id.*)

44.     The EULA grants an individual user "a personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use one copy of the Software on a device for [the user's] personal entertainment use." (*Id.*)

45.     Epic also includes a "License Conditions" section in its EULA. (*Id.*) In that section, the EULA specifically defines certain prohibited activities and states that **a player may not:**

> a.     **use Fortnite** "commercially or **for a promotional purpose;**"

b.      "**copy, reproduce, distribute, display**, or use [Fornite] in a way that is not expressly authorized in this Agreement;"

c.      "**reverse engineer, derive source code from, modify, adapt, translate, decompile, or disassemble it or make derivative works based on it;**"

d.      "**remove, disable, circumvent, or modify any proprietary notice or label or security technology included in it;**" or

e.      "**create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes.**" (*Id.*) (emphasis added.)

46.      By accessing, downloading and/or using Fortnite, Defendant agreed to be bound by the EULA.

47.      Defendant also agreed to be bound by the EULA by affirmatively indicating his acceptance of its terms.

48.      The EULA constitutes a valid and binding agreement between Epic Games and Defendant.

49.      Defendant's conduct described herein violates the terms of the EULA and breaches Defendant's contract with Epic Games.

### *The Defendant and His Unlawful Acts*

50.      Defendant is a cheater.

51.      On information and belief, Defendant uses cheat to unlawfully modify Fortnite's software so that he has an unfair competitive advantage over other Fortnite players.

52.      Cheats give a cheater power to do or see things that others players cannot. For instance, a cheat might enable the cheater to see through solid objects, teleport, impersonate

another player by "spoofing" that player's user name, or make moves other players cannot, such as a spin followed by an instant headshot to another player.

53.     Nobody likes a cheater.  And nobody likes playing with cheaters.  These axioms are particularly true in this case.

54.     Epic does not allow or support cheats in Fortnite, including in the Battle Royale game mode.

55.     Defendant downloaded and accessed Fortnite.

56.     Defendant used the cheat in Fortnite to modify Fortnite's copyrighted code.

57.     Defendant used the cheat in a deliberate attempt to destroy the integrity of, and otherwise wreak havoc in, the Fortnite game.  As Defendant intends, this often ruins the game for the other players.

58.     Defendant created and posted several videos on TouTube to demonstrate, advertise, and distribute his cheat software.

59.     Defendant operates at least two YouTube channels under the monikers █████

██████████████████

60.     On October 14, 2017, Defendant used the ██████ channel to post a live-stream video of himself cheating while playing Fortnite titled ████████████████████

████████ (the "First Video").[3]  The First Video was available at:

████████████████████

61.     During the First Video, Defendant demonstrated his use of the cheat to unlawfully modify the Fortnite game code, instructed viewers as to how to use the cheat in the same way, and provided viewers with a link to a location from which they could acquire the cheat for their own use.  (A true and correct copy of a screen print from the First Video, as shown on

---

[3] Errors in spelling, grammar, and punctuation that appear in this and other quotes from Defendant's writings are from the original text.

Defendant's ███████ YouTube channel, along with a link to the site from which the cheat was available for download is pictured directly below at **Figure 2**.)



**Figure 2.**

62.    As can be seen in Figure 2, above, Defendant's ███████ YouTube channel has at least 8,000 subscribers.  These subscribers receive notifications every time a video, like the First Video, is posted.  At the time the screen print was captured, at least 22 viewers were watching the First Video.  (*See* Figure 2.)

63.    On October 14, 2017, Epic submitted to YouTube a DMCA notice that included all the required elements.  YouTube took the First Video down on the same day the notice was submitted.

64. After the First Video was taken down, Defendant posted a video entitled ███████████████████████████████ (the "Second Video"). In the Second Video, Defendant admitted to "hacking in Fortnite," incorrectly claimed that his hacking is permitted under the doctrine of fair use, and publicly disclosed the email address of one of Epic's in-house lawyers, in violation of YouTube's community guidelines.

65. On October 14, 2017, Epic submitted a request that the Second Video be removed for violation of YouTube's community guidelines.

66. Also on October 14, 2017, after the First Video had been taken down, Defendant used a different YouTube channel account, ████████████ to post another live-stream of himself cheating while playing Fortnite, which he titled, ██████████████████████ ████████ (the "Third Video"). The Third Video was available at: ███████████████████████████████ (A true and correct copy of a screen print from the Third Video, as shown on Defendant's ██████████ YouTube channel is pictured directly below at **Figure 3**.)



*Figure 3.*

67.     On information and belief, Defendant created the ▮▮▮▮▮▮ channel in an attempt to circumvent YouTube's removal of the First Video posted on his ▮▮▮▮▮▮ channel.

68.     On October 14, 2017, Epic submitted a DMCA notice that included all the required elements. YouTube took down the Third Video the same day the notice was submitted.

69.     On October 16, 2017, YouTube removed the Second Video because of Defendant's violation of YouTube's Community Guidelines.

70.     On information and belief, the cheat software used by Defendant (and those whom Defendant induces to use such software) improperly injects unauthorized code into the active memory of the game as it runs. The cheat manipulates the functionality of the game and gives the cheater an unfair advantage over other players, changing and disrupting the game.

71.     This unauthorized modification of the game's code as it runs on the cheater's computer and of the code that is sent back to Epic's servers materially changes both the game's

code and the audio visual aspects of the game generated by the code. These changes create a different version of the Fortnite game than the Fortnite game that is generated by Epic's copyright protected software.

72.     In using cheat software to modify the game's code in this way, Defendant and other cheaters who use the cheat create unauthorized derivative works based on Fortnite in violation of the Copyright Act.

73.     Use of the cheat software also violates the express terms of both the EULA and the Terms, both of which prohibit any modification of the game and the creation of derivative works based on Fortnite.

74.     Defendant's posting of his First and Third Videos infringe Epic's exclusive rights to publicly display and/or publicly perform its copyrighted works in violation of the Copyright Act.

75.     Defendant has been banned at least 14 times of for violating the Terms and the EULA. Defendant has circumvented this by creating numerous other accounts under false names and continues to play and cheat at Fortnite.

76.     On October 17, 2017, Defendant submitted a counter-notification responding to Epic's DMCA takedown notice for the First Video in which he stated "i did noting rong this strike is all wrong I was modding in a video game that isn't against youtubes TOS Why was i striked !!!" (A true and correct copy of a screen print of Defendant's counter-notification with the contact information for Epic's in-house counsel and Defendant redacted is attached hereto as **Exhibit D**.)

77.     Defendant has expressed animus towards Epic for enforcing its copyrights.

78.     The description of Defendant's Third Video that appeared under Defendant's public broadcast of himself cheating at Fortnite after his initial live-stream during which he

demonstrated and advertised his cheat software had been taken down, included the hashtag "#FUCKEPICGAMES". (*See* Figure 3, above.)

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Copyright Infringement in violation of
the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)**

79.     Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 78 of this complaint, as if set forth fully herein.

80.     Epic is the author, creator and owner of all rights, title and interest in a number of valid, registered, and enforceable copyrights in Fortnite.

81.     These copyrights are the subjects of the copyright registration certificates referenced above and attached hereto as <u>Exhibit A</u>, and are incorporated by reference as if fully set forth herein.

82.     Defendant has had and continues to have access to Fortnite.

83.     Defendant has infringed and continues to infringe Epic's copyrights in Fortnite by improperly using computer software that injects code into Fortnite's code which then materially modifies and changes Fortnite's code, thereby creating an unauthorized derivative work of Epic's copyrighted Fortnite code.

84.     Epic never authorized Defendant to create derivative works based on Fortnite.

85.     Defendant has also infringed Epic's copyrights in Fortnite by publicly displaying, and/or publicly performing the unauthorized derivative works, which include Epic's underlying copyrighted content, in at least the First and Third Videos as posted on YouTube.

86.     Defendant's submission of the DMCA counter notification, which requires YouTube to restore the infringing content unless Epic files an action seeking a court order to

restrain Defendant from engaging in infringing activity within 10 days, creates a continuing risk of copyright infringement.

87.     Epic never authorized Defendant to publicly display or publicly perform the unauthorized derivative works.

88.     In creating such unauthorized derivative works and by publicly displaying and/or publicly performing Defendant's unauthorized derivative works, Defendant has infringed Epic's copyrights and is liable to Epic for direct and willful infringement under 17 U.S.C. § 501, *et seq.*

89.     On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's infringement.

90.     In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

91.     In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to Defendant's willful infringement.

92.     Defendant's conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff's great and irreparable injury that cannot fully be compensated or measured in money.  Epic has no adequate remedy at law for Defendant's wrongful conduct because (i) Epic's copyrights are unique and valuable property that have no readily determinable market value; (ii) Defendant's infringement constitutes an interference with Epic's goodwill and customer relations, and (iii) Defendant's wrongful conduct, and the damages resulting therefrom are continuing.

93.     Moreover, the plain language of the DMCA requires that Plaintiff file an action seeking a court order to restrain Defendant from engaging in infringing activity within 10 days of Defendant's counter notification.

94. Therefore, Epic is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to an order under 17 U.S.C. § 503(a) that prohibits Defendant from further infringing Epic's copyrights and orders Defendant to destroy all copies of infringing videos and the cheat he is using against Epic in violation of Epic's copyrights

95. Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement
### in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*)

96. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 95 of this complaint, as if set forth fully herein.

97. As set forth above, Epic is the owner of valid, registered, and enforceable copyrights in Fortnite.

98. As also set forth above, Defendant has created and posted live-stream videos demonstrating his use of the cheat software in Fortnite, promoting other to use the cheat in Fortnite, and providing users a way to obtain the cheat.

99. As described above, this cheat software unlawfully modifies Fortnite's copyrighted code in a manner that infringes Epic's copyrights by creating unauthorized derivative works of Epic's Fortnite software.

100. By having provided users access to the cheat via his ███████ Youtube Channel and the First Video, Defendant materially contributed to the direct infringement of Epic's copyrights, actively encouraged and induced other cheaters and would-be cheaters to access and use the cheat, and supported their use of the cheat on Fortnite.

101. Defendant has actual knowledge of the direct infringing activity of these other cheaters described above, and caused or contributed materially to, and/or participated substantially in, such direct infringement.

102. As set forth above, Defendant's submission of the DMCA counter notification, that requires YouTube to restore the First Video and it links to the cheat, which will induce and enable additional direct and contributory infringement unless Epic files an action within 10 days seeking a court order to restrain Defendant from engaging in, inducing, and contributing to such direct infringement, creates a continuing risk of contributory copyright infringement.

103. Defendant has engaged in his acts of contributory infringement with the actual and/or constructive knowledge that the preparation of derivative works based upon Epic's Fortnite software infringes Epic's copyrights in the software.

104. On information and belief, Defendant engages in such conduct to promote the cheat via his ▮▮▮▮▮▮▮ YouTube channels because Defendant obtains some financial benefit or value in consideration for his video postings and/or the sale of the cheat he promotes and demonstrates in the First and Third Videos.

105. Accordingly, Defendant is liable for contributory copyright infringement of Epic's Fortnite game.

106. On information and belief, Epic has suffered damages, including lost sales and profits, as a result of Defendant's contributory infringement.

107. On information and belief, Epic has suffered actual damages, including lost sales and profits as a result of Defendant's contributory infringement.

108. In addition to Epic's actual damages, Epic is entitled to receive any additional profits made by Defendant from his wrongful acts pursuant to 17 U.S.C. § 504.

109.    In the alternative, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c). These statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2) due to the Defendant's willful contributory infringement.

110.    As a result of Defendant's contributory copyright infringement, Epic has suffered and will continue to suffer, substantial and irreparable damage to its business reputation and good will, as well as actual losses in an amount not yet fully ascertained, but which will be further determined according to proof.   Epic's remedy at law is not adequate to redress the harm Defendant has caused and will continue to cause unless and until his conduct is otherwise restrained and enjoined.

111.    Moreover,  the plain language of the DMCA requires that Plaintiff file an action seeking a court order to restrain Defendant from engaging in infringing activity within 10 days of Defendant's counter notification.

112.    By reason of the foregoing, Epic is entitled to injunctive relief against Defendant pursuant to 17 U.S.C. § 502.

113.    Epic is also entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract)**

114.    Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 113 of this complaint, as if set forth fully herein.

115.    Access to and use of Epic's services, including Fortnite, is governed by and subject to the Terms.

116.    Access to and use of Fortnite is also governed by and subject to the EULA.

117.    In order to use Epic's services, including Fortnite, all users must "read and agree" to the Terms in order to create an account with Epic.

118. In order to access Fortnite, users must "read and agree" to the terms of the EULA.

119. Defendant agreed to the Terms and the EULA by creating an account with Epic, using and accessing Epic's services, and/or downloading, playing, and/or accessing Fortnite. Therefore, the Terms and the EULA are both valid, enforceable contracts between Epic and the Defendant.

120. On information and belief, Defendant regularly used and accessed Epic's services having knowledge that he was bound by the Terms and by the EULA.

121. Epic has performed all of its obligations under the Terms and the EULA.

122. Defendant has and has continued to knowingly, intentionally, and materially breach the Terms and EULA by, among other things,

    a. making derivative works based on Fortnite;

    b. copying, reproducing, distributing, displaying, using, modifying, performing, republishing, or transmitting Fortnite in a way not authorized in the EULA or the Terms; and/or

    c. creating, developing, distributing, or using unauthorized software programs to gain advantage in any online or other game modes.

123. As a direct result of Defendant's breaches of the Terms and EULA, Epic has been, and will continue to be, harmed and is entitled to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendant.

## FIFTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)

124. Epic re-alleges and incorporates fully by reference the allegations in paragraphs 1 through 123 of this complaint, as if set forth fully herein.

125.     As set forth above, in order to play Fortnite, a user must first create an account with Epic.  To create an account, a user must agree to abide by the Terms.  A user's agreement to abide the Terms creates a contract between Epic and the user.

126.     The Terms expressly prohibit a user from "**copy[ing], modify[ing], creat[ing] derivative works of, publicly display[ing]**, publicly perform[ing], republish[ing] or transmit[ting] **any of the material obtained through [Epic's s]ervices.**"  (Exhibit B at 2) (emphasis added.)

127.     In order to play Fortnite, a user must also agree to abide by the Fortnite EULA.  A user's agreement to abide by the EULA also creates a contract between Epic and the user.

128.     The EULA prohibits a player from "**reverse engineer[ing], deriv[ing] source code from, modify[ing], adapt[ing], translat[ing], decompil[ing,] or disassembl[ing** Fortnite] or **mak[ing] derivative works based on** [Fortnite]" and "**creat[ing], develop[ing], distribut[ing], or us[ing] any unauthorized software programs to gain advantage in any online or other game modes**."  (Exhibit C at 1) (emphasis added.)

129.     Epic's contracts with its users are valid and enforceable.

130.     On information and belief, Defendant has knowledge of the contracts between Epic and its registered users, and Defendant has knowledge of the previously recited prohibitions that the Terms and the EULA place on users since Defendant is a registered user of Epic's services and has agreed to the terms of both the EULA and the Terms.

131.     Defendant, knowing that the use of cheat by Fortnite users breaches the contracts between Epic and its users, has intentionally and willfully encouraged and induced users of Fortnite to use the cheat.

132.     Defendant, therefore, has intentionally interfered, and will continue to interfere, with the contracts formed between Epic and its users.

133. On information and belief, Defendant has acted without justification in intentionally interfering with the contracts between Epic and its users.

134. On information and belief, as a direct result of Defendant's actions, Epic has suffered damages in an amount to be proven at trial including, but not limited to, loss of goodwill among users of Epic's services, decreased profits, and lost profits from users whose accounts Epic has terminated for violations of the Terms and the Fortnite EULA.

135. As a direct result of Defendant's actions, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Epic is entitled to injunctive relief to restrain and enjoin Defendant's continuing unlawful conduct.

136. Epic is further entitled to compensatory damages and any other available relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment in its favor, and against Defendant, for the following:

1. Enter judgment in Plaintiff's favor and against Defendant on all claims herein;

2. Adjudge Defendant to have infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*;

3. Adjudged Defendant to have contributorily infringed Epic's copyrights in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq*;

4. Adjudge Defendant to have breached the Terms of Service and the Fortnite End User License Agreement in violation of North Carolina law;

5. Adjudge Defendant to have tortuously interfered with contracts between

Plaintiff and users of its services in violation of North Carolina law;

6. Declare that Defendant's infringement and other wrongdoings were willful in nature;

7. Enter an order pursuant to 17 U.S.C. § 502 that preliminarily and permanently enjoins Defendant from (i) infringing any of Epic's copyrighted works; and/or (ii) inducing or materially contributing to the direct infringement of any of Epic's copyrighted works by others;

8. Enter an order that preliminarily and permanently enjoins Defendant from (i) violating the Terms of Service; (ii) violating the EULA; and/or (iii) intentionally interfering with Epic's contractual relations with the other parties to those agreements;

9. Enter an order pursuant to 17 U.S.C. § 502 that preliminarily and permanently enjoins Defendant by requiring the destruction of all infringing videos and copies of cheats or hacks in Defendant's possession, custody, or control that can be used to infringe Epic's copyrights in Fortnite so as to restrain Defendant's continued violations of Epic's copyrights in Fortnite;

10. Enter an order pursuant to 17 U.S.C. § 504 requiring that (i) Defendant pay Epic the maximum amount of statutory damages permitted under 17 U.S.C. § 504, or, in the event that Epic elects to instead to recover actual damages and Defendant's additional profits from Defendant at any time before final judgment is rendered; and/or (ii) Defendant pay Epic's actual damages and Defendant's additional profits, together with interest, including pre-judgment, as fixed by the Court;

11. Enter an order pursuant to 17 U.S.C. § 505 awarding Epic its attorneys' fees, costs, and expenses; and

12. Award Plaintiff such other and further relief as the Court deems just and

proper.

This the <u>23rd</u> day of October, 2017.

PARKER POE ADAMS & BERNSTEIN LLP

/s/Christopher M. Thomas
Christopher M. Thomas
N.C. Bar No. 31834
christhomas@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone:     (919) 835-4626
Facsimile:     (919) 834-4564

*Attorney for Plaintiff Epic Games, Inc.*