IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:17-cv-00534-H

| | |
|---|---|
| EPIC GAMES, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>C.R., )<br><br>Defendant. ) | **PLAINTIFF EPIC GAMES, INC.'S RESPONSE TO DEFENDANT C.R.'S MOTION TO DISMISS** |

## I.     INTRODUCTION

Plaintiff Epic Games, Inc. ("Plaintiff" or "Epic"), by and through undersigned counsel,

hereby opposes the arguments in the letter sent to the Court by Lauren Rogers ("Ms. Rogers"),

mother and general guardian of Defendant C. R. ("Defendant" or "C.R."), which the Court held

is to be construed as a motion to dismiss ("Defendant's Motion"). (*See* D.E. 14 at 2.) Because

Defendant has not met the requirements of Rule 12(b) of the Federal Rules of Civil Procedure,

Epic respectfully requests that this Court deny Defendant's Motion and allow Epic to resubmit

its Motion for Entry of Default.

## II.     STATEMENT OF FACTS

### A.     Background on Epic and Fortnite

Epic, founded in 1991, is a Cary, North Carolina-based developer and publisher of

computer games and computer game engine and content creation software.  (D.E. 1 at ¶ 13.)

PPAB 419433Sv4

Epic first released its co-op survival and building action game, Fortnite®[1], on a limited basis in October 2013. (*Id.* at 14-17.) Fortnite was released more widely in July 2017 and its free-to-play "Battle Royale" game mode was released in September 2017. (*Id.* at ¶ 17.) Fortnite's popularity has grown steadily ever since. (*See id.* at ¶¶ 18-19.) In designing Fortnite, Epic made a conscious choice <u>not</u> to sell items to players that would give any player a competitive advantage to ensure a fair playing field for all players. (*Id.* at ¶ 20.)

Epic is the author and owner of all rights, title, and interest in the copyrights in Fortnite, including without limitation, its underlying computer software and the audio visual works created by the software. (*Id.* at ¶ 21.) Epic's copyrights in various versions of Fortnite's computer code are the subjects of U.S. Copyright Registration Nos. TXu01-895-864 (dated December 18, 2013), TX008-186-254 (dated July 14, 2015), TX008-254-659 (dated March 3, 2016), and TX008-352-178 (dated December 23, 2016). (*Id.* at Exh. A, [D.E. 1-1].). These registrations are valid and subsisting. (*See id.* at ¶ 22.)

**B.** **Epic's Terms of Service and End-User Licensing Agreement**

To use Epic's services, such as playing Fortnite on PC, a user must create an account with Epic. (*Id.* at ¶ 23.) In doing so, a user affirmatively acknowledges that he or she has "read and agree[d] to the Terms of Service" ("Terms"). (*Id., id.* at Exh. B [D.E. 1-2].) Because C.R. has been using Epic's services, he necessarily agreed to abide by the Terms. (*Id.* at ¶¶ 23-36.) C.R. has been banned from using Epic's services at least 14 times for cheating. (*Id.* at ¶ 75.) Therefore, C.R. created at least 14 user accounts and, each time, affirmatively acknowledged acceptance of the Terms. (*See id.* at ¶¶ 23-26.)

---

[1] Fortnite is a registered trademark of Epic and is shown with the federal registration symbol the first time the trademark appears herein and without it thereafter.

PPAB 419433Sv4 Case 5:17-cv-00534-H   Document 20   Filed 04/23/18   Page 2 of 17

The Terms include an "Intellectually Property Rights" section that sets forth the permissions users have with respect to Epic's intellectual property and activities which are prohibited. The prohibited activities are set out in Paragraph 33 of the Complaint and include a prohibition against "copy[ing], modify[ing], creat[ing] derivative works of, publicly display[ing], publicly perform[ing,], republish[ing], or transmit[ting] any of the material obtained through [Epic's s]ervices." (*Id.* at ¶ 33.) The Terms also include a prohibition against using Epic's services for unlawful purposes. (*Id.* at ¶ 34.)

In order to play Fortnite on PC—which is the platform C.R. used to play (and cheat at) Fortnite—a user must also acknowledge that he has read and agreed to abide by the terms in the Fortnite End-User License Agreement for PC ("EULA"). (*Id.* at ¶ 38, *id.* at Exh. C. [D.E. 1-3].) Thus, because C.R. played Fortnite, he necessarily agreed to abide by the EULA. (*Id.* at ¶¶ 38-48.) Like the Terms, the EULA includes a section setting out prohibited activities. These prohibited activities include using Fortnite "commercially or for a promotional purpose;" copying, reproducing, distributing, displaying, or using Fortnite in a way that is not expressly authorized; reverse engineering, deriving source code from, modifying, adapting, translating, decompiling, or disassembling Fortnite, or making derivative works based on Fortnite; removing, disabling, circumventing, or modifying any proprietary notice of label or security technology included in Fortnite, or creating, developing, distributing, or using any unauthorized software programs to gain advantage in any online or other game modes. (*Id.* at ¶ 45.)

## C. C.R's Infringing Activities

Defendant used cheat software ("cheats") while playing Fortnite to unlawfully modify Fornite's software so that he had an unfair competitive advantage over other players. (*Id.* at ¶¶ 50-58.) The cheat software works by injecting unauthorized code into Fortnite's copyrighted

code, modifying and altering the copyrighted code, and creating an unauthorized derivative work of Epic's copyrighted Fortnite game, which infringes Epic's copyrights in the game. (*Id.*)

Defendant operates at least two YouTube channels under the monikers ███████ and ████████████ where he actively promotes, distributes, and induces others to use cheat software. (*Id.* at ¶ 59.)

On October 14, 2017, Defendant used the ████████ channel to post a live-stream video of himself cheating while playing Fortnite titled ███████████████████████████ ████████ (the "First Video").[2] (*Id.* at ¶ 60.) In the First Video, Defendant demonstrated his use of the cheat to unlawfully modify the Fortnite game code, instructed viewers as to how to use the cheat in the same way, and provided viewers with a link to a location from which they could acquire the cheat for their own use. (*Id.* at ¶¶ 61-62.)

On October 14, 2017, YouTube removed the First Video as a result of a DMCA takedown notice submitted by Epic. (*Id.* at ¶ 63.) After the First Video was taken down by YouTube, Defendant posted a video entitled ██████████████████████████ (the "Second Video"). (*Id.* at ¶ 64.) In the Second Video, Defendant admitted to "hacking in Fortnite," incorrectly claimed that his hacking is permitted under the doctrine of fair use, and publicly disclosed the email address of one of Epic's in-house lawyers in violation of YouTube's community guidelines. (*Id.*) Also on October 14, 2017, after the First Video had been taken down, Defendant used a different YouTube channel, ████████ to post another live-stream of himself cheating while playing Fortnite, which he titled, ███████████████████ ██████ (the "Third Video"). (*Id.* at ¶¶ 65-67.) On October 14, 2017, YouTube took down the Third Video following a DMCA notice submitted by Epic, and on October 16, 2017, YouTube

---

[2] Errors in spelling, grammar, and punctuation that appear in this and other quotes from Defendant's writings are from the original text.

4

PPAB 4194335v4 Case 5:17-cv-00534-H   Document 20   Filed 04/23/18   Page 4 of 17

took down the Second Video pursuant to a notice submitted by Epic for violation of YouTube's community guidelines. (*Id.* at ¶¶ 65, 68-69.)

On October 17, 2017, Defendant submitted a counter-notification responding to Epic's DMCA takedown notice for the First Video in which he stated ████████████████████ ████████████████████████████████████████████ .

(D.E. 1 at ¶ 76; *id.* at Exh. D [D.E. 1-4].) Under 17 U.S.C. § 512(g)(2), Epic had between ten and 14 days to file the instant action against C.R. seeking to restrain him from engaging in infringing activity. *Id.* If Epic had not filed this action, the Online Service Provider ("OSP") would have restored the infringing content. (*Id.*)

In addition to infringing Epic's copyrights, Defendant has expressed animus towards Epic for Epic's enforcement of its copyrights. (D.E. 1 at ¶ 77.) The description of the Third Video, which appeared under Defendant's public broadcast of himself cheating at Fortnite after his initial live-stream during which he demonstrated and advertised his cheat software had been taken down, included the hashtag ████████████████ (*Id.* at ¶ 78.)

### D. Epic's Service of the Complaint and C.R.'s Post-Filing Activity

Epic first attempted to serve Defendant on October 27, 2017, and, after becoming aware that Defendant was a reportedly a minor, attempted service a second time on November 9, 2017, this time through the Office of the Sheriff of New Castle County in Wilmington, Delaware, which is where Defendant resides. (D.E. 10 at ¶¶ 1-8; *id.* at Exh. A [D.E. 10-1].) After learning that the second attempt was unsuccessful, Epic found a different address for Ms. Rogers and Defendant, engaged a private investigator to confirm that it was the current address of Ms. Rogers and Defendant, and, on January 18, 2018, successfully effected service of the amended summons and complaint on both C.R. and Ms. Rogers. (*Id.* at ¶¶ 9-17; *id.* at Exhs. B-C [D.E.

10-2, 10-3].)

On November 15, 2017, the Clerk of Court filed an unsigned, undated, ex parte communication ("November 15 Letter" or "Letter") from Ms. Rogers on the docket. (D.E. 6.) The November 15 Letter states that C.R. is a minor, discusses the contents of the Complaint, and concedes that C.R. cheated in Fortnite. (*Id.* at 1.) Epic filed a responsive letter on November 30, 2017 in which it stated that it did not know that Defendant was a minor when the Complaint was filed and asked for guidance as to whether the Court would like the papers at issue sealed or redacted and re-filed. (D.E. 7 at 1-2.)

Having not received a pleading responsive to the Complaint, Epic moved for entry of default on February 13, 2018. (D.E. 14.) As noted above, on April 3, 2018, the Court ruled that the November 15 Letter was to be construed as a motion to dismiss and that Epic respond within 21 days. (D.E. 14 at 2.)

## III. LAW AND ARGUMENT

"A 12(b)(6) motion tests the legal sufficiency of the complaint."[3] *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, No. 2:08-CV-24-BO, 2009 WL 159608, at *3 (E.D.N.C. Jan. 21, 2009) (citing *Papasan v. Allain,* 478 U.S. 265, 283 (1986)). In ruling on a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Ray Commc'ns, Inc.*, 2009 WL 159608, at *3 (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Sed, Inc. of S.C. v. Seven Creeks Entm't, LLC*, No. 7:10-CV-222-H, 2012 WL 525730, at *1 (E.D.N.C. Feb. 16, 2012) (internal citations and quotations omitted).

---

[3] Because Defendant does not contest personal jurisdiction, subject matter jurisdiction, venue, process, service of process, or joinder of parties, Epic responds to the November 15 Letter as if it were a Motion to Dismiss under Fed. R. Civ. P. 12(b).

PPAB 4194335v4 Case 5:17-cv-00534-H   Document 20   Filed 04/23/18   Page 6 of 17

Fed. R. Civ. P. 8 merely requires that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). A complaint need not make specific allegations, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007), nor need it "make a case" against a defendant or "forecast evidence sufficient to prove an element of the claim," *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005) (internal citations and quotations omitted). A complaint need only allege enough facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 555-556. In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the burden is on the moving party to demonstrate that the plaintiff has failed to state a claim. . ." *Joe Hand Promotions, Inc. v. Blackburn*, No. 7:11-CV-276-BO, 2012 WL 4863697, at *2 (E.D.N.C. Oct. 12, 2012). Motions to dismiss "should be granted sparingly and with caution to make certain that the plaintiff is not improperly denied a right to have his claim adjudicated on the merits." Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1349 (3d ed. April 2017 update).

## A.   Because Defendant Has Not Demonstrated that Epic Has Failed to State a Claim, the Motion to Dismiss Must Be Denied

The November 15 Letter makes four basic arguments:

i.   Epic "has no capability of proving [that Defendant's action resulted in] any form of modification;"
ii.  Epic "illegally" released Defendant's name;
iii. Epic is unable to prove "profit loss" and is also unable to prove that it is entitled to any financial gains that may have inured to C.R. as a result of his cheating; and
iv.  Epic's contracts pursuant to the Terms and the EULA are not valid because Defendant is a minor and because Epic did not seek parental consent.

(D.E. 6, 1-3.)

The first three make no allegation that Epic has failed to state a claim and are, therefore, irrelevant. The fourth, when read liberally, alleges that Epic has failed to state a claim for breach of contract under North Carolina law. This is not correct.

Each of Defendant's arguments is addressed below. But because Defendant has not carried his burden of proving that Epic's Complaint fails to allege sufficient facts to state a claim for relief that is plausible on its face, his "motion to dismiss" must be denied. *Joe Hand Promotions, Inc.*, 2012 WL 4863697 at *2 (denying Defendant's motion to dismiss because the motion only discussed "lack of evidence, [but] it [did] not contest the legal sufficiency of the complaint" and that the motion did not "contend that the facts plead . . . [did] not state a plausible claim for relief.").

**B.     The Letter's Allegation that Epic Cannot Prove that Defendant Modified Epic's Copyrighted Fortnite Game Code is Neither Correct Nor Relevant**

The November 15 Letter opens with an allegation that Epic cannot prove that Defendant modified Epic's proprietary game code. (D.E. 6 at 1.) This appears to be an argument that Epic cannot prove Defendant infringed Epic's copyrights by creating unauthorized derivative works. Whether Epic can prove it or not is immaterial at this stage because the inability to prove a claim is not a valid argument for dismissal at this stage.

A complaint need not prove the elements of the claims – it need only *"allege facts sufficient to state* elements of the claim." *Chao,* 415 F.3d at 349 (internal quotations omitted) (emphasis in original) (denying defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), which argued that the complaint did not prove or establish the that the elements of the claim were met). Epic's claims for direct and contributory copyright infringement meet the pleading requirements.

*1.    Epic has adequately stated its claims for direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, et seq.*

The essential elements of a claim for direct copyright infringement under the Copyright Act are:

> (1) the asserted work is an original work of authorship and copyrightable subject matter;
> (2) the plaintiff owns or has exclusive rights to all right, title, and interest in the work;
> (3) the defendant's actions infringe plaintiff's copyrights in the asserted work by copying, reproducing, preparing derivative works from, and/or displaying the asserted work publicly without plaintiff's permission;
> (4) the defendant's copies, reproductions, derivative works, and displays are identical and/or substantially similar to plaintiff's.

*See Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002).

Each one of these elements is stated in the complaint. Epic alleged that it owns the copyrights in Fortnite's computer code. (D.E. 1 at ¶¶ 22, 79-81; *id.* at Exh. A [D.E. 1-1]) (showing Epic's U.S. copyright registrations in Fortnite code); *see Nelson-Salabes, Inc.*, 284 F.3d at 513 (holding that proof of plaintiff's copyright registration certificates are sufficient to meet the first two elements of the test).

Epic also alleged that C.R. prepared derivative works of Fortnite without Epic's authorization.  As stated in the Complaint:

> the cheat software used by [C.R.] improperly injects unauthorized software code into the active memory of the [Fortnite] game as it runs. . . .  This unauthorized **modification of the game's code as it runs** on the cheater's computer **and of the code that is sent back to Epic's servers materially changes both the game's code and the audio visual aspects of the game generated by the code.**  These **changes create a different version of the Fortnite game** than the Fortnite game that is generated by Epic's copyright protected software.

(D.E. 1 at ¶¶ 70-72; *see also id.* at ¶¶ 4, 83) (emphasis added). *See also* 17 U.S.C. § 106(2) (listing the right "to prepare derivative works based upon the copyrighted work" as one of the

copyright holder's exclusive rights); 17 U.S.C. § 101 (defining "derivative work" as "a work based upon one or more preexisting works . . . [in any] form in which a work may be recast, transformed, or adapted.") Accordingly, Epic has properly alleged that C.R.'s use of the cheat software creates unauthorized derivative works based on Fortnite in violation of the Copyright Act. (D.E. 1 at ¶¶ 74-75, 84.)

Epic also alleged that C.R. publicly displayed and/or publicly performed the unauthorized derivative works, which include Epic's underlying copyrighted content, in further violation of the Copyright Act. (*Id.* at ¶ 85.) *See* 17 U.S.C. §§ 106(4)-(5) (listing, in the case of audiovisual works, the rights to perform and display the copyrighted work publicly as two of the copyright holder's exclusive rights); 17 U.S.C. § 101 ("To perform or display a work 'publicly' means . . . to transmit or otherwise communicate a performance or display of the work . . . to the public, by means of any device or process . . .."). C.R.'s demonstration of the use of the cheats in at least the First and Third YouTube Videos constitutes the unauthorized public display and/or public performance of the unauthorized derivative works. (D.E. 1 at ¶ 85.)

Epic has also adequately alleged that the unauthorized derivative work prepared and publicly displayed and/or publicly performed by C.R. is substantially similar to Fortnite. (*Id.* at ¶¶ 57, 70-72, 83.) As described in the Complaint, C.R.'s cheating creates an unauthorized version of Fortnite in which the copyright-protected code is modified by other code injected by C.R., which materially alters the game's code and the audio visual work the code creates. (*Id.* at ¶ 52.)

Epic also alleged that C.R. had access to Fortnite and that C.R. used Epic's services, including Fortnite. (*Id.* at ¶¶ 7, 55, 82) (alleging, *inter alia*, that C.R. has been banned from playing Fortnite at least 14 times and continues to play using other accounts created using false

names.) Accordingly, the Complaint states a claim for direct copyright infringement upon which relief can be granted. (*Id.* at ¶¶ 79-95.)

> 2. *Epic has stated its claims for contributory copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, et seq.*

The essential elements of a claim for contributory copyright infringement are that the defendant (1) has knowledge of a third party's infringing activity; and (2) induces, causes, or materially contributes to the infringing conduct. *See Thomson v. HMC Grp.*, No. CV1303273DMGVBKX, 2014 WL 12589313, at *5 (C.D. Cal. July 25, 2014).

Epic stated the first element by alleging that C.R. had constructive and actual knowledge that other cheaters were engaging in the same infringing activity as C.R. (D.E. 1 at ¶¶ 98, 101, 103-104.) The Complaint alleges that C.R.'s activities directly infringed Epic's copyrights. (*See, supra,* Section III(B)(1)) (citing D.E. 1 at ¶¶ 79-95, 99.) Epic alleged the second element by alleging that C.R. published two of the videos, demonstrated how the cheat works, and provided instructions for use of the cheat and the Internet location of the cheat "in an effort to induce others to buy the cheats he sells so that they too can cheat at Fortnite," so that they may infringe Epic's copyrights in exactly the same way C.R. has infringed. (*Id.* at ¶¶ 7, 70, 100, 102.) Accordingly, the allegations of the Complaint state a claim for contributory copyright infringement upon which relief can be granted. (*Id.* at ¶¶ 96-113.)

PPAB 4194353v4
Case 5:17-cv-00534-H   Document 20   Filed 04/23/18   Page 11 of 17

## C.    The Letter's Allegation that Epic "Illegally" Released Defendant's Name is Irrelevant and Baseless

The Letter's allegation that Epic illegally released a minor's name has no bearing on whether Epic has properly stated its claims in the Complaint. None of Epic's claims include an element related to the release of a minor's name.

In any case, Defendant's allegation that Epic acted illegally is false. Defendant cites State of Delaware House Bill No. 64, for the proposition that "it is illegal to release under age individuals' personal information by **any agencies**. . ." That bill, once it became a law, authorized the use of "Medical Orders for Scope of Treatment in Delaware" and is inapplicable here. *See* H.B. 64, 148th Gen. Assemb., Reg. Sess. (Del. 2015).[4] Because Defendant's allegation is irrelevant, it cannot serve as a basis for dismissal of the Complaint.[5]

## D.    The Letter's Allegation that Epic will be Unable to Prove it is Entitled to Certain Damages is Irrelevant

The Letter also argues that Epic will be unable to prove it is entitled to certain types of damages, including lost profits and the recovery of any financial benefit that inured to C.R., on the basis that Fortnite is a free-to-play game. Besides being untrue, this is irrelevant. Epic's demand for relief is not part of a plaintiff's statement of the claim and, therefore, is "not . . . subject to dismissal under [Fed. R. Civ. P.] 12(b)(6)." *See Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (citing *Alexander v. Se. Wholesale Corp.*, 978 F.Supp.2d 615, 624 n. 7 (E.D. Va. 2013)) (denying defendant's motion to dismiss plaintiff's request for punitive damages). Further, the type of relief sought is not

---

[4] The act allows individuals to plan ahead and memorialize their end-of-life health care decisions in a standardized medical order that can travel with the individual. *See* H.B. 64, 148th Gen. Assemb., Reg. Sess. (Del. 2015).

[5] Moreover, Epic acted quickly once it became aware that C.R. is a minor at least by asking the Court for guidance as to the manner in which papers using Defendant's identifying information should be handled. (D.E. 7.) Epic has re-filed a redacted version of the Complaint and the Copyright Report in compliance with the Court's Order Denying Plaintiff's Motion for Entry of Default. (D.E. 15-16.)

PPAB 4194353v4

relevant to an analysis focusing on whether a plaintiff has satisfied the pleading standards. *See Charles*, 21 F. Supp. 3d at 631 (citing *Int'l Fid. Ins. Co. v. Mahogany, Inc.*, No. CIV JKB-11-1708, 2011 WL 3055251, at *2, n.1 (D. Md. June 25, 2011)). Thus, Defendant's argument cannot serve as a basis for dismissal of the Complaint.

### E.     Epic's Breach of Contract Claim States a Claim for Relief

Epic has stated a claim for breach of contract, because it has alleged (1) the existence of a valid contract and (2) subsequent breach of the contract's terms. *See Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 216, 768 S.E.2d 582, 590 (2015). Specifically, Epic allged that valid, enforceable contracts exist between C.R. and Epic under the Terms and the EULA because Defendant agreed to be bound by the terms of each of those agreements not only once, but 14 times. (D.E. 1 at ¶¶ 115-121.)

Epic also alleged that C.R.'s activities– including the creation of unauthorized derivative works based on Fortnite, displaying and performing these derivative works in an unauthorized way, and distributing and using unauthorized software programs to gain an advantage in Fortnite – constitute breaches of the Terms and the EULA. (*Id.* at ¶¶ 5-7, 37, 49, 54, 58, 73, 122.) These allegations state a claim for breach of contract upon which relief can be granted. (*Id.* at ¶¶ 114-123.)

> *1.     The Letter's Allegation that the Contracts Entered Into Pursuant to the EULA and the Terms are Invalid is Also Without Merit*

The November 15 Letter asserts that the EULA and the Terms do not create valid contracts with Defendant because Defendant is a minor. (D.E. 6 at 1). This "infancy defense" is not available to C.R. This is because, "[i]f an infant enters into any contract subject to conditions or stipulations, he cannot take the benefit of the contract without the burden of the conditions or stipulations." *A.V. v. iParadigms Ltd Liab. Co.*, 544 F. Supp. 2d 473, 480–81 (E.D. Va. 2008),

*aff'd in part, rev'd in part sub nom. A.V. ex rel. Vanderhye v. iParadigms, LLC,* 562 F.3d 630 (4th Cir. 2009) (citing Samuel Williston, Contracts § 9:14 (4th ed. 2007)).

In *iParadigms,* which is factually analogous to the instant case, four minor high school students sued a software company for copyright infringement claiming that the company's anti-plagiarism software, which was used in the students' schools for the purpose of submitting written work, improperly archived the students' work in violation of the Copyright Act. *Id.* at 473–478. One issue in the case was whether there was a valid, enforceable contract between the students and the software company. *Id.* at 473–478. The software company claimed that a valid contract had been formed because, in order to use the software, the students had to "click 'I Agree' to the terms of the 'user agreement.'" *Id.* The students objected to this and asserted the "infancy defense." *Id.* The court declined to apply the defense at summary judgment and held that a valid contract existed between the minors and the software company as a result of the students' affirmative agreement to the user agreement. *Id.* at 480–81. The court found that the infancy defense failed because a minor may not "use the infancy defense to void their contractual obligations while retaining the benefits of the contract. *Id.* at 481.

The same principle applies here to the same result. C.R affirmatively agreed to abide by Epic's Terms and EULA, (D.E. 1 at ¶¶ 28, 38, 46-47, 117-119,) and "retained the benefits" of the contracts he entered into with Epic. Accordingly, C.R. should not be able to "use the infancy defense to void [his] contractual obligations by retaining the benefits of the contract[s]." *A.V.,* 544 F. Supp. at 480-482. The Court should deny Defendant's motion to dismiss Plaintiff's breach of contract claim accordingly.

Defendant's argument that Epic's contract claims are not valid because of Epic's alleged failure to include a "parental consent drop down" and an "age range drop down" is also

mistaken. Epic is not required to include drop down menus in its registration process nor is the use of these drop down menus industry-standard. Epic's claims of breach of contract satisfy the pleading standards. Defendant's motion should be denied.

**F.     Epic has adequately stated its claim of intentional interference with contractual relations.**

The essential elements of a claim for intentional interference with contractual relations are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person;
> (2) the defendant knows of the contract;
> (3) the defendant, without justification, intentionally induces the third person not to perform the contract;
> (4) resulting in actual damage to the plaintiff.

*Red Arrow v. Pine Lake Preparatory, Inc. Bd. of Directors*, 226 N.C. App. 431, 741 S.E.2d 511 (2013).

As set forth above, Epic stated that valid and enforceable contracts exist between Epic and users of its services, including players of Fortnite. (D.E. 1 at ¶¶ 125-129.)  Epic further alleged that C.R. knew the terms of those agreements, and that other users of Epic's services are required to agree to abide by the Terms and the EULA, because he entered into those same contracts. (*Id.* at ¶ 130.)

The Terms and the EULA explicitly list activities that users are prohibited from engaging in.  C.R.'s public display and demonstration of the cheats and active inducement constitutes intentional inducement of third parties to breach the Terms and the EULA by using the cheats. (*Id.* at ¶¶ 131-132.) Epic alleged that C.R. engaged in this misconduct without justification. (*Id.* at ¶ 133.)  Finally, Epic alleged that C.R.'s intentional inducement of others resulted in actual damage to Epic, e.g., that Epic suffered a loss of goodwill among users of Epic's services,

PPAB 41943550a4Se 5:17-cv-00534-H   Document 20   Filed 04/23/18   Page 15 of 17

decreased profits, and lost profits from users whose accounts Epic terminated for violations of the Terms and the EULA. (*Id.* at ¶¶ 124-136.) In light of the above, Epic's Complaint states a claim for intentional interference with contractual relations upon which relief can be granted.

## IV. CONCLUSION

For all of the foregoing reasons, Epic respectfully requests that Defendant's Motion to Dismiss be denied.

This the 23rd day of April, 2018.

/s/ Christopher M. Thomas
Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Tasneem A. Dharamsi
N.C. State Bar No. 47697
tasneemdelphry@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
150 Fayetteville Street, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564


*Attorneys for Plaintiff*
*Epic Games, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing **PLAINTIFF'S EPIC GAMES, INC.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** was electronically filed this day with the Clerk of Court using the CM/ECF system and that a true and accurate copy of it was sent to all parties to this cause by depositing the original and/or copy hereof, postage pre-paid, in the United States mail, addressed as follows:

C.R.
c/o Lauren Rogers
501 West Ave.
New Castle, DE 19720

This the 23rd day of April 2018.

/s/ Christopher M. Thomas
Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Tasneem A. Dharamsi
N.C. State Bar No. 47697
tasneemdelphry@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
150 Fayetteville Street, Suite 1400
Post Office Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 828-0564
Facsimile: (919) 834-4564